IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

ASHLEY B.,

Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-01188-YY

OPINION AND ORDER

YOU, Magistrate Judge.

Plaintiff Ashley B.[1] seeks judicial review of the Commissioner's final decision denying Social Security disability benefits. The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). With that standard of review applied, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

## I. Medical Opinion Evidence

### A. Standard Regarding Evaluation of Medical Opinion Evidence

When evaluating medical opinion evidence for claims filed on or after March 27, 2017, ALJs must apply 20 C.F.R. § 404.1520c for Title II claims and 20 C.F.R. § 416.920c for Title

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

XVI claims. *Revisions to Rules Regarding the Evaluation of Medical Evidence* (*Revisions to Rules*), 82 Fed. Reg. 5844, *available at* 2017 WL 168819 (Jan. 18, 2017). Under these regulations, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules*, 82 Fed. Reg. at 5867-68; *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner evaluates the persuasiveness of medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5).

The factors of "supportability" and "consistency" are considered to be "the most important factors" in the evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* (citing 20 C.F.R § 404.1520c(c)(2)).

An ALJ must articulate how persuasive the ALJ finds the medical opinions and explain how the ALJ considered the supportability and consistency factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to explain how other factors were considered, as appropriate, including relationship with the claimant (length, purpose, and extent

of treatment relationship; frequency of examination); whether there is an examining relationship; specialization; and other factors, such as familiarity with other evidence in the claim file or understanding of the Social Security disability program's policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to explain "how they considered other secondary medical factors [if] they find that two or more medical opinions about the same issue are equally supported and consistent with the record but not identical." *Tyrone W.*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and 404.1520c(b)(3)).

Furthermore, the court must continue to consider whether the ALJ's decision is supported by substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims under our current rules have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

**B. Jessica Wilkerson, PMHNP-BC**

Jessica Wilkerson, PMHNP-BC, completed a Mental Impairment Questionnaire on March 27, 2024. Tr. 949. She opined that plaintiff had:

- Moderate ability to understand, remember or apply information;
- Marked ability to interact with others;
- Moderate ability to concentrate, persist, or maintain pace; and
- Moderate ability to adapt and manage oneself.

Tr. 950. She further opined that plaintiff was (1) markedly limited in remembering procedures, understanding and remembering simple instructions, maintaining attention for two-hour segments, getting along with supervisors, and performing work without getting distracted, Tr.

951, and (2) extremely limited in maintaining regular attendance and completing an eight-hour day without needing additional rest periods. Tr. 951. Wilkerson believed that plaintiff's impairments or treatment would cause her to be absent from work more than four times a month. Tr. 952.

The ALJ found Wilkerson's opinion was not persuasive because it was "not well supported by explanation and overestimates the claimant's limitations in a manner inconsistent with the complete record including" plaintiff's "often normal mood and affect." Tr. 27. The ALJ cited extensively to the record. However, these citations show a handful of instances where plaintiff's mood was noted as normal when was seen for non-mental health reasons, such as birth control or a rash:

> Tr. 357 (B2F/8) (October 26, 2022, hypertriglyceridemia, "Mood normal");
> Tr. 359 (B2F/10) (August 30, 2022, Nexplanon insertion, "appropriate mood");
> Tr. 363 (B2F/14) (July 21, 2022, birth control, "Mood normal");
> Tr. 369 (B2F/20) (June 15, 2022, annual routine check-up, "Mood normal" but indicated depression and anxiety were at her baseline and answered yes to feeling down, depressed, and helpless, PHQ-9 score of 19);
> Tr. 373 (B2F/24) (May 11, 2022, annual physical exam, received vaccinations, "Mood normal");
> Tr. 378 (B2F/29) (February 23, 2022, rash, "Mood normal").

Otherwise, the record shows that plaintiff was depressed, anxious, and/or engaging in self-cutting behavior:

> Tr. 560 (B4F/35) (November 2, 2021, medication management, "[m]ood euthymic" but "continues to actively engage in self harm/mutilating behaviors");
> Tr. 611 (B4F/86) (January 25, 2022, "calm, cooperative, depressed," currently struggles with self-harm in the form of cutting, recurrent suicidal behavior/thoughts/gestures" and lack of impulse control, "pretty severe" mood swings, emotionally exhausted);

> Tr. 798 (B7F/8) (September 13, 2023, feeling depressed and hopeless, which causes her to self harm, intense anxiety with full-blown panic attacks even when spending time with friend);
> Tr. 804 (B7F/14) (September 27, 2023, depression and anxiety);
> Tr. 807 (B7F/17) (October 5, 2023, depressed and anxious mood);
> Tr. 810 (B7F/20) (October 12, 2023, depressed mood)Tr. 813 (B7F/23) (October 17, 2023, agitated, depressed and anxious mood);
> Tr. 816 (B7F/26) (October 24, 2023 depressed mood);
> Tr. 820 (B7F/30) (November 7, 2023 depressed mood);
> Tr. 825 (B7F/35) (November 21, 2023, depressed mood);
> Tr. 829 (B7F/39) (November 28, 2023, depressed mood);
> Tr. 833 (B7F/43) (December 5, 2023, depressed mood);
> Tr. 837 (B7F/47) (December 12, 2023, depressed mood);
> Tr. 841 (B7F/51) (December 19, 2023, depressed mood);
> Tr. 845 (B7F/55) (January 2, 2024, depressed mood);
> Tr. 849 (B7F/59) (January 9, 2024, depressed mood);
> Tr. 853 (B7F/63) (January 16, 2024, depressed mood);
> Tr. 857 (B7F/67) (January 23, 2024, depressed mood);
> Tr. 862 (B7F/72) (January 30, 2024, depressed mood);
> Tr. 865 (B7F/75) (February 20, 2024, depressed and anxious mood);
> Tr. 869 (B7F/79) (February 13, 2024, depressed and anxious mood);
> Tr. 890 (B8F/13) (November 15, 2023, annual physical exam, feeling down, depressed, irritable, or hopeless more than half the days);
> Tr. 965 (B10F/13) (January 25, 2024, up and down, engaged in self-harm (cutting) the prior week);
> Tr. 974 (B10F/22) (March 11, 2024, mood anxious, up and down);
> Tr. (B10F/27) (April 15, 2024, mood apathetic, anxious).

Thus, substantial evidence does not support the ALJ's reliance on “normal” findings as a basis for discounting Wilkerson’s opinion.

The ALJ also discounted Wilkerson’s opinion because it was inconsistent with notations in the record describing plaintiff’s speech, eye contact, grooming, intact or good/fair memory, alertness and orientation, logical, linear, and goal-oriented thought process, good/fair attention span, or only mildly impaired attention span, as well as her denial of suicidal ideation. But this often ignores the context in which these observations were made. For example, on September 12,

2023, plaintiff displayed normal speech and a kempt appearance but exhibited a depressed mood. Tr. 798; *see also* Tr. 531 (September 2022, plaintiff displayed clear, normal speech, but it was pressured and she was tearful and restless). Also, while plaintiff was not suicidal, plaintiff engaged in self-harm through cutting and burning. Tr. 307; Tr. 62 (plaintiff's hearing testimony that she had not stopped cutting); Tr. 898 (reporting increasing thoughts of self harm); Tr. 900 (describing she had "scratched"); Tr. 965 (plaintiff admitted "she did cut last week").

In sum, the reasons the ALJ provided for rejecting Wilkerson's opinion are legally insufficient.

## II. Subjective Symptom Testimony and Remaining Claims

Plaintiff also contends the ALJ erred in discounting her subjective symptom testimony. In rejecting plaintiff's subjective symptom testimony, the ALJ relied on many of the same portions of the record discussed above. The court declines to reach this and other issues raised in plaintiff's briefing because they are related to plaintiff's limitations, which will be reassessed on remand.

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED November 23, 2026.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge